UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| EVANSVILLE GREENWAY AND REMEDIATION TRUST, a Qualified Settlement Trust, </br></br>Plaintiff, </br></br>v. </br></br>SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, INC., an Indiana Corporation; et al., </br></br>Defendants. </br>_____ </br></br>EVANSVILLE GREENWAY PRP GROUP, </br></br>Third-Party Plaintiff, </br></br>v. </br></br>GENERAL WASTE PRODUCTS, et al., </br></br>Third-Party Defendants. | </br></br></br></br></br></br>3:07-cv-66-DFH-WGH </br></br></br></br></br></br></br></br></br></br></br></br></br></br></br></br></br></br> |

## ORDER ON MOTIONS TO COMPEL

This matter came before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on January 13, 2010, for a hearing on SIGECO's Motion to Compel filed December 22, 2009 (Docket Nos. 629-31), Brief in Opposition filed January 11, 2010 (Docket No. 655), and Reply filed January 21, 2010 (Docket No. 686), and Third-Party Plaintiff Evansville Greenway PRP Group's Motion to Compel filed December 22, 2009 (Docket No. 632), Brief in Opposition filed January 11, 2010 (Docket No. 656), and a Reply filed January 21, 2010 (Docket No. 684).  A

Surreply in Opposition to both Motions to Compel was filed February 10, 2010. (Docket No. 702). Because both of these motions seek similar relief addressing the appropriateness of a privilege log produced by Evansville Greenway Remediation Trust (hereafter "the Trust") and third-party defendants General Waste Products (hereafter "GWP") and Allan Trockman (hereafter "Trockman"), the Magistrate Judge will discuss and rule on both motions in a single entry.

This case is an environmental cleanup case brought by the Trust against defendants who are allegedly responsible for cleanup costs on two sites in Evansville, Indiana. A number of the defendants have banded together to form an entity called the Evansville Greenway PRP Group (hereafter "the PRP Group"). The PRP Group has brought a Third-party Complaint against GWP and Trockman, the owners and operators of the sites needing remediation.

This discovery dispute arises out of three Requests for Production and responses, which state:

> Request Number 4: Produce copies of any and all agreements, understandings, settlements or negotiations between CNA, GWP, Trockman, the Trust, the City of Evansville, the Resolution Law Group, Hunsucker Goodstein & Nelson, or any two or more of the preceding, Relating to the Sites, costs incurred at the Sites, and/or the IDEM Demands (collectively, "Settlements").
>
> RESPONSE: Objection. The Trust objects on the additional bases that this Request is unclear and overbroad. Without waiving any objections, non-privileged relevant documents related to agreements between GWP, Trockman, the Trust and the City of Evansville were previously made available via a production of over 160 boxes of documents to all parties on December 16-19, 2008, as required by Order of the Court. As part of that document review, SIGECO obtained copies of certain documents, which were endorsed as Trust

0034889 through 0052279, however SIGECO did not provide GWP or the Trust with copies of these documents.  Therefore, at this time, the Trust is unable to direct SIGECO to the bates numbers of those documents included in the December 2008 review that would be relevant to this request.  Any non-privileged, relevant responsive documents not in existence at that time will be made available for SIGECO's inspection pursuant to Objection H above.  Documents directly relevant to this request, which have been bates stamped and produced by the Trust, are available at Trust 0013227 through 0014238 and 018611 through 0108743.4

Request Number 5:  Produce all documents relating to the negotiation of, approval or nonapproval of, drafting of, revising of, acceptance of, rejection of, and/or commentary on, the Settlements, or any of them.

RESPONSE:  See Response to Request No. 4.

Request Number 6:  Produce all documents relating to communications exchanged between Trockman [each Request was tailored to identify the appropriate Objecting Party] and any other entity regarding the Settlements, or any of them.

RESPONSE:  See Response to Request No. 4.

The Magistrate Judge understands that the Trust has produced the formal settlement agreement executed by the Trust, GWP, Trockman, and its insurers. However, the Trust withheld certain documents pertaining to the communications leading up to the execution of the formal settlement agreement.  As to those items, the Trust provided a privilege log consisting of approximately 1,954 entries on 267 pages on November 12, 2009.[1]  The parties contest a number of issues with respect to the appropriateness of the privilege log and the question of the existence of certain privileges.  In an attempt to move the parties further forward (which may

---

[1] The document is a work in progress.  It has now reached 298 pages and 2,191 entries.

not resolve all problems arising out of the privilege log), the Magistrate Judge will address the claims of privilege asserted by the plaintiff based on "settlement" and the "common interest privilege."[2] The Magistrate Judge will first address the "common interest privilege."

**The common interest privilege:**

The joint defense privilege, more properly identified as the common interest rule, has been described as an extension of the attorney-client privilege, *In re Sulfuric Acid Antitrust Litigation,* 235 F.R.D. 407 (N.D. Ill. 2006), quoting *United*

---

[2]None of the specific objections make reference to the "settlement privilege" or the common interest privilege. However, in "General Objections and Reservations Applicable to All Requests," General Objection C states:

> Plaintiff objects to SIGECO's Requests on the basis of the community of interest privilege to the extent that any specific Request, Definition, or Instruction seeks production of documents, materials, and/or other information protected by the attorney-client privilege or the work product protection that have been exchanged or otherwise communicated between or among any [sic] those parties with whom the plaintiff has a community of interest, including but not limited to, CNA, GWP, Trockman, and the City of Evansville.

(Trust's Responses to SIGECO's Discovery Requests and Interrogatories at 4). Likewise, General Objection E states:

> This objection specifically applies to all Definitions and Requests that reference the Confidential Settlement Agreement and Release between CNA and GWP dated July 29, 2004 (the "Settlement Agreement"). The Settlement Agreement was disclosed subject to a protective order pursuant to a June 9, 2009 Order of the Court. The June 9, 2009 Order specifically states that the Settlement Agreement was being disclosed for the limited purposes of determining whether Trockman is biased or prejudice [sic] and evaluating the standing of the Trust to bring this action. The Trust objects to any reference to definitions contained within the Settlement Agreement and Requests based on information contained in the Settlement Agreement which are outside of the limited purposes of disclosure outlined by the Court.

(*Id.,* at 5).

*States v. Evans,* 113 F.3d 1457, 1467 (7th Cir. 1997) (internal citation omitted). "Although occasionally termed a privilege itself, the common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person. *United States v. BDO Siedman LLP,* 492 F.3d 806, 815 (7th Cir. 2007) (citation omitted). The privilege applies where the parties undertake a joint effort with respect to a common legal interest. This effort need not involve litigation, but can exist with respect to any interest in a "legal matter." *See In re: Sulfuric Acid,* 235 F.R.D. at 416. In *United States v. McPartlin,* 595 F.2d 1321, 1336 (7th Cir. 1979), the Seventh Circuit has held that the common interest doctrine applies "where different lawyers represent clients who have some interest in common . . . . The rule does not apply to situations where there is no common interest to be promoted by a joint consultation and the parties meet on a purely adversary basis." *Id.* at 1336 (citations omitted).

    In this case, GWP, its insurers, the City of Evansville, and eventually the Trust were engaged in at least some common purpose. Specifically, those parties had the "common interest" of determining the appropriate environmental cleanup for each of the two yards at issue, at a reasonable cost, and with an eye towards seeking the existence of other potentially responsible parties who may be required to participate in the cleanup. *McPartlin* stands for the proposition that the existence of some adverse relationship between GWP and its insurers does not prohibit the application of the doctrine, at least from the point at which it becomes

clear a common interest has occurred. In this case, the Magistrate Judge concludes that it is proper to assert a common interest privilege beginning at the point in time in which the parties to the underlying litigation between GWP and its insurers commenced settlement negotiations. The Trust suggests that a settlement conference held December 16, 2002, in the CNA/GWP litigation serves as a logical starting point to identify when a common interest came into existence. No different commencement point is easily ascertainable. The Magistrate Judge would adopt the time period for which a common interest began as the first settlement conference which occurred in the underlying CNA litigation.

The Magistrate Judge would remind the parties that the common interest privilege is considered an "extension" of the attorney-client privilege and would attach only to documents or communications exchanged between the attorney and client, or between the attorneys for each client.[3] The privilege would not attach to communications that are directed to IDEM or other entities. Neither would the privilege attach to communications which do not contain legal opinions but are merely conduits for conveying underlying facts discovered in the course of the litigation.

**Privilege asserted by the Trust based on "settlement negotiations":**

The Trust has withheld production of communications created by the parties during negotiations undertaken to resolve a prior lawsuit between GWP, Trockman,

---

[3]In this case, the Magistrate Judge would conclude that those with a common interest include CNA, GWP, Trockman, the Trust, the City of Evansville, the Resolution Law Group, and the Hunsaker, Goodstein & Nelson firm.

and its insurers. These negotiations ultimately resulted in the creation of the Trust. The Trust asserts that a "settlement privilege" exists and relies on the language of Federal Rule of Evidence 408. The Trust recognizes that Rule 408 does not protect settlement agreements themselves from discovery and has produced the ultimate settlement agreements. The issue before the Magistrate Judge is whether communications during the scope of the negotiation of the final settlement agreement must also be disclosed.

      The parties have not submitted any authority, and the Magistrate Judge has found none, that specifically establishes a federal privilege from disclosure of the negotiations leading up to a settlement agreement. Rule 408 would clearly prohibit the introduction into evidence of any such negotiations. The rule reads: "Evidence of conduct or statements made in compromised negotiations is likewise not admissible." However, the rule also provides, in pertinent part, that "this rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness . . . ." Because the evidence of conduct or statements can be admissible for some purposes, discovery of that information would seem to be required.

      In this case, the testimony of Trockman is extremely important evidence. As the principal owner and operator of the site at issue, his memory and recollection of the various customers and the types of materials which they brought to the yard for recycling will play a major part in the determination of which defendants may be liable and what their respective shares of liability may be. Whether Trockman's

testimony in those regards might be affected, consciously or subconsciously, by the resolution of the previous insurance litigation should be explored during his testimony at trial.

The Trust does make a strong argument that public policy encourages free and frank settlement discussions, and that to disclose each shred of settlement discussion will have a chilling effect on other settlement negotiations going forward in this case and in other litigation. The Trust points out, rightly in the view of this Magistrate Judge, that Rule 408 was enacted expressly to encourage settlement discussions. In reviewing the Advisory Committee notes to Rule 408, a distinction surfaces between two types of evidence that arise out of settlement negotiations. The first type consists of "admissions of liability or opinions given during compromised negotiation" which continue to be inadmissible at trial. The second type of evidence is of "unqualified factual assertions" expressed during negotiations. This type of factual assertion remains admissible under the rule. (*See* 1984 Enactment). The Magistrate Judge believes that most communications surrounding settlement would include *both* certain statements which purport to be facts *and* opinions of counsel as to the applicable law. In addition, it is likely that settlement discussions involve predictions as to what other regulatory agencies would do, along with discussions concerning alternative approaches to methods and costs of cleaning up the site.

If in the course of settlement discussions Trockman made statements of fact which are inconsistent with later testimony in this trial, the factual statements

brought forward in the settlement documents – at least those determined to be unqualified factual assertions – (*see* Advisory Committee notes, 1974 Enactment) would be admissible evidence. Admissions of liability or opinions on liability made by Trockman or his counsel, however, are clearly inadmissible. Therefore, if the documents sought to be protected by the settlement negotiations contain what might be unqualified factual assertions by Trockman, those representations would not only be discoverable, they would also be admissible.

However, under Federal Rule of Civil Procedure 26(b)(2)(C), the court, "on its own," must "limit the frequency or extent of discovery otherwise allowed by these rules if it determines that: . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the action, and the importance of the discovery in resolving the issues."

In this case, there are approximately 2,000 entries on the privilege log addressing settlement documents. Given the fact that the parties have exchanged the formal settlement documents in this case, they already have substantial evidence to use in the cross-examination of Trockman. In order to properly protect the "opinions of counsel" and "admission of liability" from "unqualified factual assertions" which might be found in the settlement communications, an attorney would need to review the contents of each of these 2000 documents and redact the inadmissible opinions and admissions from the unqualified factual assertions. The process of doing this in over 2,000 documents would undoubtedly consume huge

amounts of attorney time, leaving fewer resources to move the dirt necessary to effectuate the purpose of this lawsuit. The burden and expense to the multiple parties involved in this litigation outweigh the incremental increase in information that the parties may achieve with respect to their ability to cross-examine Trockman. The need to review each of these documents, to redact certain opinions or statements as to liability (which are not admissible under Rule 408), and to screen these documents for potential factual assertions would require an extraordinary amount of time. The Magistrate Judge believes the disclosure of the formal settlement documents are what is needed in the case to address Trockman's credibility. The exploration of the thought processes of counsel for Trockman and CNA produces only a small increment in evidence needed to cross-examine Trockman, but that small increment comes at a large cost. While the amount in controversy in this case may involve several million dollars, the need for multiple counsel to review, redact, and examine these settlement negotiation documents would also be extraordinarily expensive. With respect to the parties' resources, the Magistrate Judge notes that the purpose of the Trust was to provide for the remediation of both sites to the greatest extent possible and the use of any Trust resources to deal with this issue unduly reduces the relatively limited amount of money the Trust possesses. The Magistrate Judge concludes that although the settlement privilege does not apply in this case, the incremental benefit of obtaining the parties' thoughts on settlement and negotiation is outweighed by the

expense of the proposed discovery in this case and, therefore, **SUSTAINS** the objection to discovery of these materials on that basis as well.

## Conclusion

Because the Magistrate Judge concludes that additional evidence of documents underlying settlement discussions should be excluded under Rule 26(b)(2)(C), and because the Magistrate Judge concludes that a common defense privilege does attach in this case, the Motions to Compel are **DENIED.**

You are hereby notified that the District Judge may reconsider any pretrial matter assigned to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) where it is shown that the order is clearly erroneous or contrary to law.

**SO ORDERED.**

**Entered:** February 26, 2010

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Scott R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
salexander@taftlaw.com

John P. Arranz
SWANSON MARTIN & BELL
jarranz@smbtrials.com

Jennifer C. Baker
HUNSUCKER GOODSTEIN & NELSON
jbaker@hgnlaw.com

Brian C. Bosma
KROGER GARDIS & REGAS, LLP
bcb@kgrlaw.com

Sean P. Burke
BARNES & THORNBURG LLP
sean.burke@btlaw.com

Jayna Morse Cacioppo
TAFT STETTINIUS & HOLLISTER LLP
jcacioppo@taftlaw.com

Gregory P. Cafouros
KROGER GARDIS & REGAS, LLP
gpc@kgrlaw.com

Michael D. Chambers
TAFT STETTINIUS & HOLLISTER LLP
mchambers@taftlaw.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com

Travis A. Crump
STOLL KEENON OGDEN PLLC
Travis.Crump@skofirm.com

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
mdirienzo@kddk.com

Hallie Miller Fahey
Troutman Sanders LLP
hallie.fahey@troutmansanders.com

Andrew Rudolph Falk
KROGER GARDIS & REGAS LLP
arf@kgrlaw.com

Maria V. Gillen
TENNESSEE VALLEY AUTHORITY
mvgillen@tva.gov

Adam T. Goebel
STOLL KEENON OGDEN PLLC
adam.goebel@skofirm.com

Michael D. Goodstein
HUNSUCKER GOODSTEIN &
    NELSON PC
mgoodstein@hgnlaw.com

Edward S. Griggs
BARNES & THORNBURG LLP
sean.griggs@btlaw.com

Timothy A. Haley
BARNES & THORNBURG LLP
thaley@btlaw.com

Elizabeth Schroer Harvey
SWANSON MARTIN & BELL LLP
eharvey@smbtrials.com

Samuel D. Hinkle IV
Stoll Keenon Ogden PLLC
sam.hinkle@skofirm.com

Kenneth Hayes Inskeep
BARNES & THORNBURG LLP
ken.inskeep@btlaw.com

David L. Jones
JONES WALLACE, LLC
djones@joneswallace.com

Jody E. Kahn
SWANSON MARTIN & BELL LLP
jkahn@smbtrials.com

G. Daniel Kelley Jr.
ICE MILLER LLP
daniel.kelley@icemiller.com

Matthew Theron Kinst
SWANSON MARTIN & BELL LLP
mkinst@smbtrials.com

John Milton Kyle III
BARNES & THORNBURG LLP
john.kyle@btlaw.com

Douglas W. Langdon
FROST BROWN & TODD, LLC
dlangdon@fbtlaw.com

Kyle Andrew Lansberry
LEWIS & WAGNER
klansberry@lewiswagner.com

Richard J. Lewandowski
Whyte Hirschboeck Dudek S.C.
rlewandowski@whdlaw.com

Michael John Maher
SWANSON MARTIN & BELL
mmaher@smbtrials.com

Stacey H. Myers
HUNSUCKER GOODSTEIN &
 NELSON PC
smyers@hgnlaw.com

Michael Orville Nelson
HUNSUCKER, GOODSTEIN & NELSON
mnelson@hgnlaw.com

Reed W Neuman
NOSSAMAN, LLP/ O'CONNOR &
HANNAN
rneuman@nossaman.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Tina Marie Richards
BAKER & DANIELS - Indianapolis
tina.richards@bakerd.com

Robert W. Rock
JONES WALLACE LLC
rrock@joneswallace.com

Keith E. Rounder
TERRELL BAUGH SALMON & BORN
krounder@tbsblaw.com

Ross E. Rudolph
RUDOLPH FINE PORTER & JOHNSON
rer@rfpj.com

James P. Ryan
NOSSAMAN, LLP/O'CONNOR
 & HANNAN
jryan@nossaman.com

Douglas B. Sanders
BAKER & McKENZIE LLP
douglas.b.sanders@bakernet.com

G. Michael Schopmeyer
KAHN DEES DONOVAN & KAHN
mschopmeyer@kddk.com

John A. Sheehan
HUNTON & WILLIAMS LLP
JSheehan@hunton.com

Katherine L. Shelby
BINGHAM MCHALE LLP
kshelby@binghammchale.com

Leah B. Silverthorn
HUNSUCKER GOODSTEIN & NELSON
lsilverthorn@hgnlaw.com

Donald M. Snemis
ICE MILLER LLP
donald.snemis@icemiller.com

William T. Terrell
TENNESSEE VALLEY AUTHORITY
wtterrell@tva.gov

Kevin Morris Toner
BAKER & DANIELS - Indianapolis
kevin.toner@bakerd.com

John William Watson III
BAKER & McKENZIE LLP
john.w.watson@bakernet.com

Thomas E. Wheeler II
FROST BROWN TODD LLC
twheeler@fbtlaw.com

Kenneth Thomas Williams II
STOLL KEENON & OGDEN PLLC
kt.williams@skofirm.com

David E. Wright
KROGER GARDIS & REGAS LLP
dew@kgrlaw.com