**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION**

| | |
|---|---|
| EVANSVILLE GREENWAY AND REMEDIATION TRUST, a Qualified Settlement Fund, | : <br> : <br> : <br> : **Case No. 03:07-cv-0066-SEB-WGH** |
| Plaintiff, | : <br> : |
| vs. | : <br> : |
| SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, INC., *et al.*, | : <br> : <br> : |
| Defendants, | : <br> : |
| EVANSVILLE GREENWAY PRP GROUP, | : <br> : |
| Third-Party Plaintiff, | : <br> : |
| vs. | : <br> : |
| GENERAL WASTE PRODUCTS, *et al.*, | : <br> : |
| Third-Party Defendants. | : |

**MEMORANDUM IN SUPPORT OF MOTION TO BAR
THE EXPERT TESTIMONY OF WILEY R. WRIGHT, III**

Third-Party Plaintiff, EVANSVILLE GREENWAY PRP GROUP, and defendants MEAD JOHNSON AND COMPANY, HERITAGE COAL COMPANY, LLC, and SOUTHERN INDIANA GAS & ELECTRIC COMPANY (collectively, "Movants"), by counsel, jointly submit this memorandum in support of their motion to exclude the opinion testimony of Wiley R. Wright, III.

## INTRODUCTION

This case involves the contamination of two sites formerly owned and operated by third-party defendants General Waste Products ("GWP") and Allan Trockman, commonly known as the Main Yard and the River Yard, in Evansville, Indiana. Plaintiff, the Evansville Greenway and Remediation Trust ("plaintiff"), has offered Wiley Wright, III as an expert regarding the verification of costs incurred in connection with investigation and remediation activities at the Main and River Yards. Mr. Wright used the data collected and reported by another of plaintiff's experts, A.J. Gravel, to form his entire opinion. Mr. Wright's method was merely to compare the cost transactions data in the Gravel report to supporting invoices, also identified in the Gravel report. Mr. Wright then opines that plaintiff incurred $3,946,397 for contractor costs in investigating and addressing contamination. However, Mr. Wright's opinions do not constitute expert testimony, will not assist the trier of fact, and are not based on a reliable methodology. Further, Mr. Wright's opinions are cumulative pursuant to Federal Rule of Evidence 403. Thus, Mr. Wright's opinions should be barred.

## The Expert Reports of Wiley Wright, III

The Trust retained expert Wiley Wright to provide an expert report regarding the identification and verification of costs incurred in connection with investigation and remediation at the Main and River Yards. Mr. Wright submitted an expert report on July 30, 2009, and supplemented that report on November 6, 2009, after having reviewed additional data from the Gravel report. (Exhibit A, Expert Report of Wiley R. Wright III, July 30, 2009; Exhibit B, Expert Report of Wiley Wright III, November 6, 2009.)

Mr. Wright's expert reports are very brief documents[1] that offer an "opinion" amounting to nothing more than verifying data in A.J. Gravel's report.  Mr. Gravel created an expert report that, among other things, reviewed response costs and other associated costs allegedly incurred by plaintiff at the Main and River Yards.  Mr. Gravel generated opinions regarding total costs for both the Main and River Yards by reviewing invoices reflecting alleged contractor costs related to cleanup.  Mr. Wright's report does nothing more than look at the costs reflected in Mr. Gravel's report and "verify" that those costs were incurred in connection with the Site.  To "verify" the costs, Mr. Wright looks at the very same documents that Mr. Gravel used in generating his report, which included contractor invoices, CNA correspondence, payment transmittals, and professional service agreements.  (Exhibit C, Deposition of Wiley Wright, February 5, 2010, at 16:12-25, 17:15-25, 18:1-25).  Mr. Wright then simply confirmed the numbers on the invoice matched the numbers in Mr. Gravel's report.  (Ex. C at 18:20-23).

As Mr. Wright admits, his testing "included comparing the cost transactions summarized by [Mr. Gravel] to supporting documents…to verify that the costs were incurred in connection with the Site and that they are accurately stated and accounted for."  (Ex. A at 3; Ex. B at 3.).  Mr. Wright's procedures were performed to determine whether the amounts reflected in Mr. Gravel's tables represented an accurate accounting of those transactions.  (Ex. C at 66:13-17).  Mr. Wright admits that he did not rely on any invoices outside those listed in Gravel's report to form his opinion.  (Ex. C at 35:8-25).  In fact, Mr. Wright's "universe and starting point" for his opinions were tables prepared by Mr. Gravel.  (Ex. C at 56:21-24).  Mr. Wright's opinions are so focused on Mr. Gravel's opinion that Mr. Wright admitted he did not know whether the costs were

---

[1]   Each of the reports is just four pages in length.

3

incurred at the Main Yard or not. Other than what is in the Gravel documents, Mr. Wright has no independent knowledge that those costs were incurred at the Main Yard. (Ex. C at 74:14)**.**

## Legal Standards for Expert Testimony

Admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standard set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). A threshold matter to be decided by a district court is whether the expert would testify to valid scientific knowledge and whether that testimony would assist the trier of fact with an issue. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). In other words, will the testimony be reliable and relevant to an issue specific to the case?

The reliability component of expert testimony is founded on the principles that an expert is qualified in a relevant field and that the opinion is based on sound scientific or other relevant methodology. *Smith*, 215 F.3d at 718. "Even a supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method." *Id.* The proponent of an expert's testimony must show that the methodology behind the expert's opinion was reliable. If the proposed testimony is unreliable, the testimony is inadmissible. *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067-68 (7th Cir. 1998).

The relevancy component turns on whether the proffered testimony will assist the trier of fact in understanding the evidence or in determining a fact at issue. *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1106 (7th Cir. 1994). The Seventh Circuit has held that expert testimony does not assist the trier of fact if "it addresses an issue of

which the [trier of fact] is already generally aware, and it will not contribute to their understanding of the particular dispute." *United States v. Hall*, 165 F.3d 1095, 1104 (7th Cir. 1999).

In making the determination as to whether proffered expert testimony is reliable and helpful, the Court acts as a gatekeeper. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999). The party offering the testimony bears the burden of establishing the relevance and reliability of the expert witness. *Daubert*, 509 U.S. at 592. Mr. Wright's testimony cannot meet the *Daubert* standard as it does not constitute expert testimony and it is a hindrance, rather than an aid, in assisting the trier of fact.

## Argument

### I. Mr. Wright's Opinion Does Not Constitute Expert Testimony And Does Not Assist The Trier Of Fact.

Mr. Wright has had a long career in accounting, concentrating in audit procedures. Mr. Wright claims that his background could be useful in the verification processes performed; however, he admits his experience might not be "directly related to any particular conclusion" in this matter. (Ex. C at 78:14-19). The bulk of Mr. Wright's past potentially relevant experience involves evaluating indirect costs allegedly incurred by the U.S. government. (Ex. C at 80:23-81:6). Mr. Wright admits there was no issue as to indirect cost analysis in this case. *Id.* Thus, it is unclear whether Mr. Wright's experience provides a proper background for the formation of an expert opinion on the payment of costs for this matter.

Further, Mr. Wright's opinions require no special scientific or expert knowledge, and thus are not a proper subject for expert testimony. Mr. Wright looked at contractor invoices, the very same invoices that formed the data in the Gravel report. Mr. Wright

checked that the information in Mr. Gravel's tables accurately reflected the information on the corresponding invoice. (Ex. C at 17:1-14). Mr. Wright looked at the invoice and the data on Gravel's tables to verify that the document backing the data identified either the Main or River Yard. (Ex. C at 19:20-23). Mr. Wright testified this "audit-like" procedure was not an actual audit because audits involve financial statements and there were none to review in this case. (Ex. C at 32:23-24). The non-audit, "audit-like" procedure accomplished nothing more than double-checking the accuracy of the Gravel report. (Ex. C at 21:2-17). Conducting this "audit-like" procedure required only simple arithmetic, and therefore does not require the specialized or technical knowledge of an expert. Mr. Wright's proffered testimony attempting to bolster the Gravel report adds nothing to the understanding of the issues in the case because the testimony is merely a repetitive assertion of the contractor costs purportedly incurred by plaintiff.

When the trier of fact could just as easily perform the efforts of an "expert," the "expert's" testimony must be barred. *Patsy's Italian Restaurant, Inc. v. Banas*, 531 F. Supp.2d 483, 485 (E.D.N.Y. 2008); see also *Trouble v. Wet Seal, Inc.*, 179 F. Supp.2d 291, 302-03 (S.D.N.Y 2001) (witness testimony barred when efforts of the witness could just as easily been performed by the trier of fact); *United States v. Naegle*, 471 F. Supp.2d 152, 159 (D.C. 2007). The advisory committee notes to Rule 702 provide detail as to whether certain testimony assists the trier of fact:

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute. When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time.

6

Fed. R. Evid. 702, Advisory Committee's Notes (2000 Amends.).

Here, Mr. Wright provides nothing that the "untrained layman" could not do. All Mr. Wright did was add up the costs clearly identified on invoices already organized into tables by another expert. To label Mr. Wright as an expert for his minimal efforts would only prejudice the defendants without adding substantive information. *See Martin v. Discount Smoke Shop, Inc.* 443 F.Supp.2d 981, 988 (C.D. Ill. 2006) (holding that expert testimony consists of using scientific, technological or other specialized knowledge that the lay person cannot be expected to possess). Mr. Wright's opinions will not contribute to the Court's understanding of this particular dispute and, therefore, should be barred. *See Hall*, 165 F.3d at 1104.

## II. The Methodology Underlying Mr. Wright's Opinions Is Not Scientifically Reliable.

"An expert opinion that is not supported by a scientifically reliable methodology is not admissible under Fed. R. Evid. 702." *Muzzey v. Kerr-McGee Chemical Corp.*, 921 F.Supp. 511, 518 (N.D. Ill. 1996). There is no evidence that Mr. Wright's methodology is generally accepted as reliable under any accounting or auditing standard. Mr. Wright's "methodology" in determining costs for the Sites was not conducted pursuant to Generally Accepted Accounting Principles (GAAP). (Ex. C at 32:2-12). Though Mr. Wright claims that his methods and procedures are consistent with Generally Accepted Audit Standards, Mr. Wright acknowledges that this was not an audit by definition. (Ex. B at 32:10-12, 32:23-24). Mr. Wright did not identify any reliable or generally accepted methodology by which he arrived at his opinions.

There are several guideposts that aid in determining whether an expert's testimony is reliable. For example, whether the testimony relates to "matters growing

7

naturally and directly out of research they have conducted independent of the litigation or whether they have developed their opinions expressly for purposes of testifying" aids in determining an expert's reliability. Fed. R. Evid. 702, Advisory Committee notes (2000 Amends.). In this case, Mr. Wright's analysis was based solely on another expert's report, which was created specifically for this litigation. Mr. Wright began his analysis with Mr. Gravel's data set, and he did not go outside the data provided by Mr. Gravel. (Ex. C at 56:21-24.) Mr. Wright conducted no independent research. Rather, he simply applied the weight of his asserted expertise to the data generated in the Gravel report by employing a vague methodology that amounts to nothing more than checking Gravel's arithmetic. Thus, Mr. Wright's opinion fails the reliability prong of *Daubert*, and should be barred.

### III. Mr. Wright's Testimony Has No Probative Value And Should Be Barred As Cumulative Evidence.

Federal Rule of Evidence 403 allows the Court to exclude evidence where the probative value of that evidence is substantially outweighed by considerations including "needless presentation of cumulative evidence." Mr. Wright's testimony does not add anything of value above what another expert, A.J. Gravel, has already said. The Court has discretion to determine whether evidence is cumulative. *U.S. v. Gardner*, 211 F.3d 1049, 1055 (7th Cir. 2000). If the probative value of evidence is outweighed by the needless presentation of cumulative evidence, that evidence should be barred. *Wilcox v. CSX Trans. Inc.,* 2007 WL 1576708, *13 (N.D. Ind. May 30, 2007) (citing F.R.E. 403). If evidence is deemed cumulative, the Court may preclude any expert testimony on the issue. *Id.*

Mr. Wright's testimony will add nothing of value or assistance to the trier of fact. Mr. Wright admitted that much of what he did in his expert report was already done by Mr. Gravel. Evidence such as Mr. Wright's should be considered cumulative where it goes to prove something already established by other evidence. *See Simon Property Group, L.P. v. mySimon, Inc.*, 2003 WL 1807135, *13 (S.D. Ind. March 26, 2003). Rehashing an expert's opinion through the opinion of a second expert confuses the issues and wastes the Court's time. Therefore, Mr. Wright's repetitive opinion testimony should be barred, under Rule 403, as cumulative and causing undue delay.

## Conclusion

Mr. Wright has offered opinions related to clean up costs allegedly incurred and paid by the Trust at the River and Main Yards. Mr. Wright's failure to provide a reliable opinion that will aid the trier of fact pursuant to Rule 702 and *Daubert* requires that the Court act as a gatekeeper and bar the testimony of Mr. Wright. Even if Mr. Wright is found to have passed the *Daubert* requirements, his testimony is cumulative and should be barred under Rule 403. Thus, Movants ask the Court to bar all opinions of Wiley R. Wright, III.

Dated: April 30, 2010.

        Respectfully submitted,

        **EVANSVILLE GREENWAY PRP GROUP**

        /s/ Andrew R. Falk
        Gregory P. Cafouros
        Andrew Rudolph Falk
        Kroger Gardis & Regas, LLP
        111 Monument Circle, Suite 900
        Indianapolis, IN 46204-5175

**HERITAGE COAL COMPANY, LLC**

/s/ Elizabeth S. Harvey
Elizabeth S. Harvey
Michael J. Maher
Swanson, Martin & Bell, LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois 60611
312.321.9100

**SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, INC.**

/s/ Timothy A. Haley
Timothy A. Haley
One of its attorneys
E. Sean Griggs/Timothy A. Haley
John Milton Kyle, III/Kenneth H. Inskeep/Sean P. Burke
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
317. 236.1313

**MEAD JOHNSON & COMPANY**

/s/ James P Ryan
James P. Ryan
One of its attorneys
Reed W. Neuman/James P. Ryan
NOSSAMAN, LLP
1666 K Street, Suite 500
Washington, D.C. 20006


## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2010, the **MOTION TO BAR THE TESTIMONY OF PLAINTIFF'S EXPERT WILEY R. WRIGHT, III** was served by operation of the Court's electronic filing system on the following parties:

***Attorneys for Plaintiff Evansville Greenway and Remediation Trust and Third-Party Defendants General Waste Products and Allan Trockman:***
Michael O. Nelson
Jennifer C. Baker
Michael D. Goodstein
Stacey H. Myers
HUNSUCKER GOODSTEIN & NELSON, P.C.
mnelson@hgnlaw.com
jbaker@hgnlaw.com
mgoodstein@hgnlaw.com
smyers@hgnlaw.com

***Attorneys for Defendant/Third-Party Plaintiff Evansville Greenway PRP Group:***
Gregory P. Cafouros
David E. Wright
Andrew R. Falk
Brian C. Bosma
KROGER GARDIS & REGAS, LLP
gpc@kgrlaw.com
dew@kgrlaw.com
arf@kgrlaw.com
bcb@kgrlaw.com

***Attorneys for Defendant Black Beauty Coal Company:***
Douglas B. Sanders
John W. Watson
BAKER & McKENZIE LLP
douglas.b.sanders@bakernet.com
john.w.watson@bakernet.com

***Attorneys for Defendants Heritage Coal Company LLC; Squaw Creek Coal Company, and Black Beauty Coal Company:***
Michael J. Maher
Elizabeth S. Harvey
John P. Arranz
Jody E. Kahn
SWANSON, MARTIN & BELL, LLP
mmaher@smbtrials.com
eharvey@smbtrials.com
jarranz@smbtrials.com
jkahn@smbtrials.com

***Attorneys for Defendant Mead Johnson and Company:***
Reed W. Neuman
James P. Ryan
NOSSAMAN, LLP/O'CONNOR & HANNAN
rneuman@nossaman.com
jryan@nossaman.com

***Attorneys for Defendant Mulzer Crushed Stone, Inc.:***
Michael E. DiRienzo
G. Michael Schopmeyer
KAHAN, DEES, DONOVAN & KAHN, LLP
*miked@k2d2.com*
*mschopmeyer@kddk.com*


***Attorneys for Defendant Southern Indiana Gas and Electric Company, Inc.:***
E. Sean Griggs
Timothy A. Haley
John Milton Kyle, III
BARNES & THORNBURG LLP
*sean.griggs@btlaw.com*
*thaley@btlaw.com*
*john.kyle@btlaw.com*

***Attorneys for Defendant Squaw Creek Coal Company:***
John A. Sheehan
HUNTON & WILLIAMS LLP
*jsheehan@hunton.com*

***Attorneys for Third-Party Defendant***
***City of Evansville:***
David L. Jones
Robert W. Rock
JONES WALLACE, LLC
*djones@joneswallace.com*
*rrock@joneswallace.com*

Keith E. Rounder
TERRELL BAUGH SALMON & BORN LLP
*krounder@tbsblaw.com*

***Attorneys for Third-Party Defendant***
***Frontier Kemper:***
Anthony W. Overholt
Thomas E. Wheeler, II
LOCKE REYNOLDS LLP
*aoverholt@locke.com*
*twheeler@locke.com*

Douglas W. Langdon
FROST BROWN TODD LLC
*dlangdon@fbtlaw.com*

***Attorneys for Third-Party Defendant***
***Indianapolis Power & Light Company:***
Kevin M. Toner
Tina M. Richards
BAKER & DANIELS LLP
*kevin.toner@bakerd.com*
*tina.richards@bakerd.com*

***Attorneys for Third-Party Defendant***
***PSI (n/k/a Duke Energy):***
Robert R. Clark
Scot R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
*rclark@taftlaw.com*
*salexander@taftlaw.com*

***Attorneys for Third-Party Defendant***
***Alliance Laundry Systems LLC (Raytheon Company):***
Richard J. Lewandowski
WHYTE HIRSCHBOECK DUDEK S.C.
*rlewandowski@shdlaw.com*

***Attorneys for Third-Party Defendant***
***Solar Sources, Inc.:***
G. Daniel Kelley, Jr.
ICE MILLER LLP
*daniel.kelley@icemiller.com*

***Attorneys for Third-Party Defendant***
***Tell City Electric Corp. and the City of Tell City, Indiana:***
Ross E. Rudolph
RUDOLPH FINE PORTER & JOHNSON
*rer@rfpj.com*

***Attorneys for Third Party Defendant***
***Tennessee Valley Authority:***
William T. Terrell
Maria V. Gillen
*wtterrell@tva.gov*
*mvgillen@tva.gov*

***Attorneys for Third-Party Defendant***
***Whirlpool Corporation:***
Katherine L. Shelby
BINGHAM McHALE LLP
*kshelby@binghammchale.com*

　　　　　　　　　　　　　　　　　　　　　　　　 /s/  Andrew R. Falk