UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| EVANSVILLE GREENWAY AND REMEDIATION TRUST, a Qualified Settlement Fund, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 3:07-cv-66-SEB-WGH |
| SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, INC., et al., | ) ) ) | |
| Defendants, _____ | ) ) ) | |
| EVANSVILLE GREENWAY PRP GROUP, | ) ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| GENERAL WASTE PRODUCTS, et al., | ) ) | |
| Third-Party Defendants. _____ | ) ) | |

**ORDER GRANTING MOTION FOR APPROVAL OF NEGOTIATED SETTLEMENTS**

This cause is before the Court on the Motion for Approval of Negotiated Settlements [Docket No. 578], filed by Third-Party Plaintiff, Evansville Greenway PRP Group ("the PRP Group") and its members, Mead Johnson & Company ("Mead

1

Johnson"), Heritage Coal Company, LLC ("Heritage"), Southern Indiana Gas & Electric Company, Inc. ("SIGECO") (collectively, "the Group Members"), and the Settling Third-Party Defendants, Frontier-Kemper Constructors, Inc., White County Coal LLC, Tell City Electric Department, the City of Tell City, Indiana, and Indianapolis Power & Light Company (collectively, "the Settlors") on November 12, 2009. Plaintiff Evansville Greenway and Remediation Trust ("the Trust") and Third-Party Defendants General Waste Products ("GWP") and Allan Trockman filed their objection to these negotiated settlements on January 21, 2010. For the reasons detailed below, we GRANT the Motion for Approval of Negotiated Settlements.[1]

## Legal Analysis

### I.     Standard of Review

Under well-established law, in deciding whether to approve a proposed settlement in the CERCLA context, the court must apply the following three factors: (1) whether the proposed decree is fair; (2) whether the settlement is reasonable; and (3) whether the proposed decree is consistent with and faithful to the objectives of the statute.[2] United States v. CBS Corp., 2009 WL 2230889, at *7 (S.D. Ind. 2009) (Young, J.); see also

---

[1] In light of the court's ruling on the instant motion, the Inquiry Re Status of Ruling on Pending Motion for Approval of Negotiated Settlements [Docket No. 821], filed by the Frontier-Kemper Settlors on May 4, 2010, is DENIED AS MOOT.

[2] Although these standards are typically applied to approval of CERCLA consent decrees that have been entered into between the government and private parties, courts also apply these same principles to the approval of settlements involving CERCLA claims between private parties. See, e.g., United States v. SCA Servs. Ind., Inc., 827 F. Supp. 526 (N.D. Ind. 1993).

United States v. SCA Servs. of Ind., Inc., 827 F. Supp. 526, 532 (N.D. Ind. 1993) (citing United States v. Cannons Engineering Corp., 899 F.2d 79, 84 (1st Cir. 1990)).  The approval of settlements in the CERCLA context is "committed to the trial court's informed discretion."  827 F. Supp. at 532 (quoting 899 F.2d at 84).  "It is not the court's function to determine whether the proposal is the best possible settlement that could have been obtained or one which the court itself might have fashioned, but rather 'whether the settlement is within the reaches of the public interest.'"  827 F. Supp. at 533 (quoting 899 F.2d at 84).

## II. Discussion

### A. Fairness

Fairness in the CERCLA context has both procedural and substantive components.  See Cannons Eng'g, 899 F.2d at 86.  "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance."  Id. (citations omitted).  Substantive fairness requires that the settlement terms "be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done."  Id. at 87.  The court will uphold the terms of a settlement so long as "the measure of comparative fault on which the settlement terms are based is not arbitrary, capricious, and devoid of a rational basis."  In re Tutu Water Wells CERCLA Litigation, 326 F.3d 201, 207 (3d Cir. 2003).

### 1.  Procedural Fairness

We find the negotiated Settlement Agreements to be procedurally fair in that they were entered into in good faith and are the product of extensive arms-length negotiations. This conclusion is further supported by the fact that the Magistrate Judge has often been involved in these and other parties' settlement discussions throughout this litigation. The objectors have put forth no evidence that the settlements have been otherwise achieved.

### 2.  Substantive Fairness

The objectors argue that the Settlement Agreements have not been shown to be substantively fair because no comparative fault analysis has been completed. However, as the First Circuit Court of Appeals recognized in <u>United States v. Charles George Trucking, Inc.</u>, 34 F.3d 1081 (1st Cir. 1994), "[a] lack of reliable records renders it impossible, as a practical matter, for a court to make reasoned findings concerning the relative contributions of particular generators or transporters to the aggregate harm." <u>Id.</u> at 1086. So it is here. There is a lack of both historical records and testimonial evidence regarding the Settlors' contribution to the contamination at issue in this litigation. Moreover, as was the case in <u>Charles George Trucking</u>, the unavailability of records in the case at bar is attributable in large part to two of the three objectors to the instant motion. While there has been extensive discovery conducted to determine the relative fault of the potentially responsible parties ("PRPs"), the majority of the business records maintained at the Main Yard and the River Yard that would have contained information helpful in determining each Settlor's contribution to the contamination at issue were

destroyed by Mr. Trockman and GWP before the initiation of this litigation. Thus, Mr. Trockman and GWP are to a great extent responsible for the absence of records about which they now complain.

Because the historical record is often incomplete or unclear in the CERCLA context, this is not a novel issue. When faced with such situations, "most courts recognizing an obligation to make findings on comparative fault in the CERCLA context have framed the obligation in such a way as to afford an exception for cases in which reliable information is unavailable." Id. at 1088 (citing Canons Eng'g, 899 F.2d at 88 (explaining need for flexibility in weighing substantive fairness, particularly when the available information is "ambiguous, incomplete, or inscrutable"); United States v. Bell Petroleum Servs., Inc., 1990 U.S. Dist. LEXIS 14066 (W.D. Tex. July 24, 1990) (rejecting the argument that, in order to deem a settlement fair, a court must find that a party's settlement corresponds to its fair share of liability, even when "no method of dividing the liability among the [d]efendants' exists that would not involve 'pure speculation'"); United States v. Rohm & Haas Co., 721 F. Supp. 666, 689 (D.N.J. 1989) (stating that whether a settlement bears a reasonable relation to some plausible range of estimates of comparative fault is a determination that must be "based on the record"); United States v. Conservation Chem. Co., 628 F. Supp. 391, 402 (W.D.Mo. 1985) (declaring that a court should spurn a settlement which "arbitrarily or unreasonably ignores the comparative fault of the parties, where there is a reasonable basis for allowing that comparison to be made")). We agree that a certain level of flexibility is necessary

5

when faced with a situation similar to that before us, where a negligible amount of evidence is all that is available to the court in assessing comparative fault.

Here, the only information that the parties have set forth in their briefing regarding the Settlors' contribution to the contamination at issue is that the Settlors were each identified early on in the settlement negotiations as having had, at most, a minimal connection to that contamination. Docket No. 695 at 2. The objectors cite no evidence to contradict this assertion, nor is there an indication that additional evidence regarding the Settlors' contribution will be forthcoming from any source. In light of this, we find that, although the lack of evidence regarding the Settlors' comparative fault for the contamination at issue renders it impossible to complete a detailed comparative fault analysis, the extremely limited information that *is* available supports a finding that the settlements, whereby each Settlor would pay less than one percent of Plaintiff's latest demand, reflect a rational apportionment of liability. In reaching this determination, we have specifically considered the allegedly *di minimis* nature of the Settlors' contribution to the contamination as well as taken into account other considerations such as the risks of litigation and the value of early settlement. See, e.g., United States v. Davis, 261 F.3d 1, 26 (1st Cir. 2001) ("Discounts on maximum potential liability as an incentive to settle are considered fair and reasonable under Congress's statutory scheme" and it "is appropriate to factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified.") (citations omitted). Our conclusion is buttressed by the fact that the settlements were reached only after a lengthy and involved

negotiation process. For these reasons, in view of CERCLA's stated preference for settlements, we cannot conclude that the Settlement Agreements are not substantively fair.

    **B.    Reasonableness**

In evaluating the reasonableness of a settlement, courts look to various factors including the settlement's "likely efficaciousness as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; and the relative strength of the parties' litigating positions." United States v. Fort James Operating Co., 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004) (citing Cannons Eng'g, 899 F.2d at 89-90). Courts also consider the foreseeable litigation risks and transaction costs associated with litigation when determining whether a settlement is reasonable. Id. at 90.

Thus considered, we find that the proposed settlements are reasonable and in the public interest, as long as the settlement funds are used for the investigation and remediation of the contaminated properties.[3] The settlements are clearly in the public interest because the funds the Settlors have agreed to pay will be material in helping to effectuate a more timely restoration of the River Yard and/or reimbursement for remediation costs at the Main Yard and appear to be proportional to the harm allegedly caused by the Settlors. Moreover, mounting transaction costs associated with protracted

---

[3] This condition is discussed further in Section II.C., *infra*.

litigation will be avoided by these settlements, thereby preserving those resources for use in investigating and remediating the contaminated sites. For these reasons, we hold that the settlements meet the reasonableness requirement.

### C. Fidelity to CERCLA

The final criterion on which to judge a settlement decree is the extent to which it is consistent with CERCLA. The two main purposes of CERCLA are: (1) to "abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites;" and (2) to "shift the costs of cleanup to the parties responsible for the contamination." Metro. Water Reclamation Dist. v. North Am. Galvanizing & Coatings, Inc., 473 F.3d 824, 827 (7th Cir. 2007). In order to demonstrate that a settlement is consistent with and faithful to CERCLA, these goals should be addressed in the proposed terms of the settlement.

The objectors contend that it has not been shown that the settlements are consistent with the goals of CERCLA because the settlement agreements do not contain assurances that the recovered amounts will be used for reimbursement of actual costs incurred in the investigation and remediation of contamination at the River Yard or the Main Yard. Docket No. 685 at 8. Further, in a letter dated January 13, 2010, the PRP Group did not specify for what purpose the settlement funds from negotiated settlements would be used, but instead merely stated that it "reserves its determination of the purpose of the remaining settlement amounts." Docket No. 685-1 at 2. The objectors argue that the settlement can only be found to be consistent with the purposes of CERCLA if the

8

settlement funds are specifically designated for use in the investigation and remediation the Properties.  In its reply brief on this motion, the PRP Group has assured the Court that the settlement funds will indeed be used for the investigation and remediation of the Properties, but no such assurance is expressly contained in the terms of the negotiated settlement agreements.

We agree with the objectors that fidelity to CERCLA requires that the settlement funds be used to investigate and remediate the Properties.  In order to ensure that the settlement funds are used for those purposes, the Court will retain jurisdiction over this matter during the pendency of the investigation and remediation of the Properties.  To the extent these funds are diverted for unauthorized purposes unrelated to the stated purpose(s), an action for contempt may follow.  With this condition, we find that the settlements are in line with the purposes of CERCLA.

### III.   Conclusion

For the reasons detailed in this entry, we find the proposed Settlement Agreements to be fair, reasonable, and consistent with the objectives of CERCLA.  Accordingly, we <u>GRANT</u> the Motion for Approval of Negotiated Settlements.

IT IS THEREFORE ADJUDGED, DECREED, AND ORDERED that:

(1)   the Settlement Agreements are approved;

(2)   the Settlement Agreements should be maintained in the Court's file under seal;

(3)   all past, present, and future counterclaims, cross-claims, and any other claims contained in, arising out of, or related to this action which have been made or could be made by any person against the Settlors or were deemed asserted and

denied by this Court's November 5, 2008 Order [Docket No. 262] are discharged and/or barred effective immediately upon entry of this Order;[4]

(4)   the Settlors are dismissed from this action with prejudice; and

(5)   in accordance with Federal Rule of Civil Procedure 54(b), there is no just reason for delay and this Order therefore constitutes a final, appealable judgment as to claims against the Settlors.

IT IS SO ORDERED.

Date: _____08/10/2010_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[4] In order to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle, CERCLA expressly provides contribution protection for parties who settle with the United States or any state. 42 U.S.C. § 9613(f)(2) ("A person who has resolved its liability to the United States or a state in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."); see also Cannons Eng'g, 899 F.2d at 92. While CERCLA is silent as to whether such contribution protection applies to private party settlements, a number of courts addressing the issue have held that such protection should also be granted to settling parties in private party CERCLA actions in order to promote settlement. See, e.g., SCA Services, 827 F. Supp. at 532; Allied Corp. v. Acme Solvent Reclaiming, Inc., 771 F. Supp. 219, 222 (N.D. Ill. 1990); Edward Hines Lumber Co. v. Vulcan Materials, 1987 WL 27368, at *5 (N.D. Ill. Dec. 4, 1987). We see no reason to depart from the reasoning set forth in these opinions.

Copies to:

Scott R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
salexander@taftlaw.com

John P. Arranz
SWANSON MARTIN & BELL
jarranz@smbtrials.com

Jennifer C. Baker
HUNSUCKER GOODSTEIN & NELSON
jbaker@hgnlaw.com

Brian C. Bosma
KROGER GARDIS & REGAS, LLP
bcb@kgrlaw.com

Sean P. Burke
BARNES & THORNBURG LLP
sean.burke@btlaw.com

Jayna Morse Cacioppo
TAFT STETTINIUS & HOLLISTER LLP
jcacioppo@taftlaw.com

Gregory P. Cafouros
KROGER GARDIS & REGAS, LLP
gpc@kgrlaw.com

Michael D. Chambers
TAFT STETTINIUS & HOLLISTER LLP
mchambers@taftlaw.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com

Travis A. Crump
STOLL KEENON OGDEN PLLC
Travis.Crump@skofirm.com

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
mdirienzo@kddk.com

Hallie Miller Fahey
Troutman Sanders LLP
hallie.fahey@troutmansanders.com

Andrew Rudolph Falk
KROGER GARDIS & REGAS LLP
arf@kgrlaw.com

Maria V. Gillen
TENNESSEE VALLEY AUTHORITY
mvgillen@tva.gov

Adam T. Goebel
STOLL KEENON OGDEN PLLC
adam.goebel@skofirm.com

Michael D. Goodstein
HUNSUCKER GOODSTEIN & NELSON PC
mgoodstein@hgnlaw.com

Edward S. Griggs
BARNES & THORNBURG LLP
sean.griggs@btlaw.com

Timothy A. Haley
BARNES & THORNBURG LLP
thaley@btlaw.com

Elizabeth Schroer Harvey
SWANSON MARTIN & BELL LLP
eharvey@smbtrials.com

Samuel D. Hinkle IV
Stoll Keenon Ogden PLLC
sam.hinkle@skofirm.com

Kenneth Hayes Inskeep
BARNES & THORNBURG LLP
ken.inskeep@btlaw.com

David L. Jones
JONES WALLACE, LLC
djones@joneswallace.com

Jody E. Kahn
SWANSON MARTIN & BELL LLP
jkahn@smbtrials.com

G. Daniel Kelley Jr.
ICE MILLER LLP
daniel.kelley@icemiller.com

Matthew Theron Kinst
SWANSON MARTIN & BELL LLP
mkinst@smbtrials.com

John Milton Kyle III
BARNES & THORNBURG LLP
john.kyle@btlaw.com

Douglas W. Langdon
FROST BROWN & TODD, LLC
dlangdon@fbtlaw.com

Kyle Andrew Lansberry
LEWIS & WAGNER
klansberry@lewiswagner.com

Richard J. Lewandowski
Whyte Hirschboeck Dudek S.C.
rlewandowski@whdlaw.com

Anne E. Lynch
HUNSUCKER GOODSTEIN & NELSON PC
alynch@hgnlaw.com

Michael John Maher
SWANSON MARTIN & BELL
mmaher@smbtrials.com

Stacey H. Myers
HUNSUCKER GOODSTEIN & NELSON PC
smyers@hgnlaw.com

Michael Orville Nelson
HUNSUCKER, GOODSTEIN & NELSON
mnelson@hgnlaw.com

Reed W Neuman
NOSSAMAN, LLP/ O'CONNOR & HANNAN
rneuman@nossaman.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Tina Marie Richards
BAKER & DANIELS - Indianapolis
tina.richards@bakerd.com

Robert W. Rock
JONES WALLACE LLC
rrock@joneswallace.com

Keith E. Rounder
TERRELL BAUGH SALMON & BORN
krounder@tbsblaw.com

Ross E. Rudolph
RUDOLPH FINE PORTER & JOHNSON
rer@rfpj.com

James P. Ryan
NOSSAMAN, LLP/O'CONNOR & HANNAN
jryan@nossaman.com

Douglas B. Sanders
BAKER & McKENZIE LLP
douglas.b.sanders@bakernet.com

G. Michael Schopmeyer
KAHN DEES DONOVAN & KAHN
mschopmeyer@kddk.com

John A. Sheehan
HUNTON & WILLIAMS LLP
JSheehan@hunton.com

Katherine L. Shelby
BINGHAM MCHALE LLP
kshelby@binghammchale.com

Leah B. Silverthorn
HUNSUCKER GOODSTEIN & NELSON
lsilverthorn@hgnlaw.com

Freedom S. N. Smith
ICE MILLER LLP
freedom.smith@icemiller.com

Donald M. Snemis
ICE MILLER LLP
donald.snemis@icemiller.com

William T. Terrell
TENNESSEE VALLEY AUTHORITY
wtterrell@tva.gov

Kevin Morris Toner
BAKER & DANIELS - Indianapolis
kevin.toner@bakerd.com

John William Watson III
BAKER & McKENZIE LLP
john.w.watson@bakernet.com

Thomas E. Wheeler II
FROST BROWN TODD LLC
twheeler@fbtlaw.com

Kenneth Thomas Williams II
STOLL KEENON & OGDEN PLLC
kt.williams@skofirm.com

David E. Wright
KROGER GARDIS & REGAS LLP
dew@kgrlaw.com