UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

EVANSVILLE GREENWAY AND REMEDIATION TRUST, a Qualified Settlement Fund,

Plaintiff,

vs.

SOUTHERN INDIANA GAS AND ELECTRIC COMPANY, INC., et al.,

Defendants,

---

EVANSVILLE GREENWAY PRP GROUP,

Third-Party Plaintiff,

vs.

GENERAL WASTE PRODUCTS, et al.,

Third-Party Defendants.

3:07-cv-66-SEB-WGH

**ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT**
**[Docket No. 888]**

This cause is before the Court on the Joint Motion to Approve Settlement [Docket No. 888], filed on August 31, 2010, by Plaintiff Evansville Greenway and Remediation Trust ("Trust"); Defendants Southern Indiana Gas & Electric Company ("SIGECO"),

Heritage Coal Company, LLC ("Heritage"), Squaw Creek Coal Company ("Squaw Creek"), Black Beauty Coal Company, LLC ("Black Beauty"), Mead Johnson Company ("Mead Johnson"), and Mulzer Crushed Stone ("Mulzer"); Third-Party Plaintiff, Evansville Greenway PRP Group ("the PRP Group"); and Third-Party Defendants Allan Trockman and General Waste Products ("GWP") (collectively "the Settling Parties"). No substantive objections to this motion have been filed.[1] For the reasons detailed below, we GRANT the Joint Motion to Approve Settlement.

**Legal Analysis**

**I. Standard of Review**

Under well-established law, in deciding whether to approve a proposed settlement in the CERCLA context, the court must apply the following three factors: (1) whether the proposed decree is fair; (2) whether the settlement is reasonable; and (3) whether the proposed decree is consistent with and faithful to the objectives of the statute.[2] United States v. CBS Corp., 2009 WL 2230889, at *7 (S.D. Ind. 2009) (Young, J.); see also United States v. SCA Servs. of Ind., Inc., 827 F. Supp. 526, 532 (N.D. Ind. 1993) (citing United States v. Cannons Engineering Corp., 899 F.2d 79, 84 (1st Cir. 1990)). The

---

[1] Third-Party Defendant, Solar Sources, Inc., filed a response to the instant motion [Docket No. 892], but did not object to the settlement, merely alerted the Court to the motions and issues that remain to be addressed in this litigation.

[2] Although these standards are typically applied to approval of CERCLA consent decrees that have been entered into between the government and private parties, courts also apply these same principles to the approval of settlements involving CERCLA claims between private parties. See, e.g., United States v. SCA Servs. Ind., Inc., 827 F. Supp. 526 (N.D. Ind. 1993).

approval of settlements in the CERCLA context is “committed to the trial court’s informed discretion.” 827 F. Supp. at 532 (quoting 899 F.2d at 84). “It is not the court’s function to determine whether the proposal is the best possible settlement that could have been obtained or one which the court itself might have fashioned, but rather ‘whether the settlement is within the reaches of the public interest.’” 827 F. Supp. at 533 (quoting 899 F.2d at 84).

## II. Discussion

### A. Fairness

Fairness in the CERCLA context has both procedural and substantive components. See Cannons Eng’g, 899 F.2d at 86. “To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance.” Id. (citations omitted). Substantive fairness requires that the settlement terms “be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done.” Id. at 87. The court will uphold the terms of a settlement so long as “the measure of comparative fault on which the settlement terms are based is not arbitrary, capricious, and devoid of a rational basis.” In re Tutu Water Wells CERCLA Litigation, 326 F.3d 201, 207 (3d Cir. 2003).

#### 1. Procedural Fairness

We find the negotiated Settlement Agreement and Stipulation (“the Agreement”)

to be procedurally fair in that it was entered into in good faith and is the product of extensive arms-length negotiations. This conclusion is further supported by the fact that the Magistrate Judge has often been involved in these and other parties' settlement discussions throughout this litigation. In addition, the Settling Parties were aided by a local mediator in reaching the Agreement.

### 2. Substantive Fairness

The court also finds the Agreement to be substantively fair. As we have noted in our previous orders approving negotiated settlements in the case at bar, the historical record before us is in some respects unclear and incomplete due in part to the extended time period – spanning approximately forty years – during which hazardous materials were deposited at the Main Yard and the River Yard ("the Properties") and exacerbated by the fact that many of the business records kept at the Properties that could have been helpful in reaching a more exact determination of each potentially responsible party's ("PRP") contribution to the contamination were destroyed before the initiation of this litigation. These circumstances make it difficult for the Court to complete a detailed comparative fault analysis. See United States v. Charles George Trucking, Inc., 34 F.3d 1081, 1086 (1st Cir. 1994) ("A lack of reliable records renders it impossible, as a practical matter, for a court to make reasoned findings concerning the relative contributions of particular generators or transporters to the aggregate harm.").

However, the documentation that has been produced regarding the relative liability of each PRP, including the business records and witness testimony that are available,

supports a finding that the Agreement reflects a rational apportionment of liability. The settling PRP's are those that have been identified as allegedly having been some of the main contributors of hazardous materials to the Properties, and, based on the Trust's total claimed damages, which initially exceeded $11 million including attorneys' fees, each settling PRP is paying a significant portion of the total claim pursuant to the terms of the Agreement. Based on the information available to the Court, those amounts appear to be proportional to the harm allegedly caused by the parties. In reaching this determination, we have also taken into account other considerations such as the risks of litigation and the value of early settlement, as well as the mounting transactional costs associated with this cause of action. See, e.g., United States v. Davis, 261 F.3d 1, 26 (1st Cir. 2001) ("Discounts on maximum potential liability as an incentive to settle are considered fair and reasonable under Congress's statutory scheme" and it "is appropriate to factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified.") (citations omitted).

Our conclusion is buttressed by the fact that the Agreement was reached only after a lengthy and often contentious negotiation process. Many of the Settling Parties were fairly intimately involved with the Properties for nearly ten years and, as a result, are in the best position to be equipped to determine what a fair allocation of the costs should be. See Charles George Trucking, 34 F.3d at 1088 ("Sophisticated actors know how to protect their own interests, and they are well equipped to evaluate risks and rewards."). The fact that the Settling Parties reached agreement after such an initially vehement

dispute only cements our decision regarding the fairness of the allocation. For these reasons, remaining mindful of CERCLA's stated preference for settlements, we conclude that the Agreement reflects a rational apportionment of liability and is neither arbitrary nor capricious. See Tutu, 326 F.3d at 207. Accordingly, we find that the Agreement is substantively fair.

**B. Reasonableness**

In evaluating the reasonableness of a settlement, courts look to various factors including the settlement's "likely efficaciousness as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; and the relative strength of the parties' litigating positions." United States v. Fort James Operating Co., 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004) (citing Cannons Eng'g, 899 F.2d at 89-90). Courts also consider the foreseeable litigation risks and transaction costs associated with litigation when determining whether a settlement is reasonable. Id. at 90.

Thus considered, we find that the Agreement is reasonable and in the public interest. The settlement is clearly in the public interest because the funds the Settling Parties have agreed to pay will be material in helping to effectuate a more timely restoration of the River Yard and/or reimbursement for remediation costs at the Main Yard and appear to be proportional to the harm allegedly caused by the parties. Although the settlement funds will not cover the total amount of the projected cost of remediation of the Properties, they will cover a substantial percentage of the currently anticipated

costs.

Moreover, as discussed above, mounting transaction costs associated with protracted litigation will be avoided by this settlement, thereby preserving those resources for use in investigating and remediating the contaminated sites. In addition to these cost savings, we have also factored into the equation the time savings afforded by this settlement, which will allow remediation of the River Yard to proceed in a much more efficient manner and will result in a more timely restoration of the site. See Cannons Eng'g, 899 F.2d at 80 ("To the extent that time is of the essence or that transaction costs loom large, a settlement which nets less than full recovery of cleanup costs is nonetheless reasonable."). Finally, the fact that the Trust (which completed the Main Yard remediation and is responsible for completing the River Yard remediation), Defendants, Third-Party Plaintiff, and the settling Third-Party Defendants are all in agreement on the settlement terms despite extremely contentious disagreement throughout all stages of this lawsuit further supports our reasonableness determination. For these reasons, we find that the Settlement Agreement meets the reasonableness requirement.

**C. Fidelity to CERCLA**

The final criterion on which to judge a settlement decree is the extent to which it is consistent with CERCLA. The two main purposes of CERCLA are: (1) to "abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites;" and (2) to "shift the costs of cleanup to the parties responsible for the contamination." Metro. Water Reclamation Dist. v. North Am. Galvanizing & Coatings,

Inc., 473 F.3d 824, 827 (7th Cir. 2007); see also Charles George Trucking, 34 F.3d at 1086 ("Among the overarching goals of CERCLA . . . are accountability, the desirability of an unsullied environment, and promptness of response activities." (internal quotations omitted). CERCLA settlements also allow resources to be put toward cleanup, rather than litigation expenses and transaction costs. See United States v. DiBiase, 45 F.3d 541, 546 (1st Cir. 1995) ("Such settlements reduce excessive litigation expenses and transaction costs, thereby preserving scarce resources for CERCLA's real goal: the expeditious cleanup of hazardous waste sites.").

This settlement is clearly in line with CERCLA's purposes as the funds collected by the Trust from the Settling Parties will be used to meet the express purposes of the Trust, including the investigation and remediation of contamination at the Properties. Moreover, as noted above, the Settlement Agreement has significantly reduced excessive litigation expenses and transaction costs by eliminating continued litigation between the Settling Parties, thereby preserving those funds to be used in a manner that furthers the goals of CERCLA.

## III. Conclusion

For the reasons detailed in this entry, we find the proposed Settlement Agreement and Stipulation to be fair, reasonable, and consistent with the objectives of CERCLA. Accordingly, we GRANT the Joint Motion to Approve Settlement. We note that there has been no settlement of the Third-Party Amended Complaint against Third-Party Defendant Solar Sources, Inc., and Solar Source's Amended Answer and Counterclaim.

Thus, still pending and unaffected by this Settlement Agreement is Solar Source's Motion for Summary Judgment [Docket No. 668].

IT IS THEREFORE ADJUDGED, DECREED, AND ORDERED that:

(1) The Settlement Agreement and Stipulation entered by the Settling Parties is approved.

(2) The Settlement Agreement and Stipulation should be maintained in the Court's file under seal.

(3) All claims asserted by or against the Settling Parties or deemed asserted by or against the Settling Parties in this Court's November 5, 2008 Order [Docket No. 262] in this matter are dismissed with prejudice, with the sole exception of the Third-Party Complaint filed by the PRP Group against Third-Party Defendant Solar Sources, Inc., and Solar Source's counterclaims.

(4) The Settlement Agreement and Stipulation represents a good faith settlement under the governing contribution protection rules contained within CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), and pursuant to all other applicable federal, state, and common law. The Settling Parties are therefore entitled to full and complete protection from any claims that have been asserted, could have been asserted, have been deemed asserted or may in the future relating to the matters released in the Settlement Agreement and Stipulation, including all claims, counterclaims, cross-claims, and third-party claims by any party, any non-settling party or other non-parties seeking contribution at any time in any form.[3]

---

[3] In order to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle, CERCLA expressly provides contribution protection for parties who settle with the United States or any state. 42 U.S.C. § 9613(f)(2) ("A person who has resolved its liability to the United States or a state in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."); see also Cannons Eng'g, 899 F.2d at 92. While CERCLA is silent as to whether such contribution protection applies to private party settlements, a number of courts addressing the issue have held that such protection should also be granted to settling parties in private party CERCLA actions in order to promote settlement. See, e.g., SCA Services, 827 F. Supp. at 532; Allied Corp. v. Acme Solvent Reclaiming, Inc., 771 F. Supp. 219, 222 (N.D. Ill. 1990); Edward Hines Lumber Co. v. Vulcan Materials, 1987 WL 27368, at *5 (N.D. Ill. Dec. 4, 1987). We see no reason to depart from the reasoning set forth in these opinions.

(5) In accordance with Federal Rule of Civil Procedure 54(b), there is no just reason for delay and this Order therefore constitutes a final, appealable judgment as to the claims resolved herein.

(6) In light of this ruling, the following pending motions are DENIED AS MOOT:

A. Motion for Summary Judgment on the PRP Group's ELA Claims [Docket No. 663];

B. Motion for Summary Judgment on Certain Response Costs [Docket No. 665];

C. Motion for Partial Summary Judgment on Defendant's Liability [Docket No. 675];

D. Motion for Summary Judgment on SIGECO's Joint and Several Liability [Docket No. 676];

E. Motion to Exclude Chris Wittenbrink [Docket No. 762];

F. Motion to Exclude Portions of Testimony of John Weaver [Docket No. 776];

G. Motion to Strike the Supplemental Rebuttal Report of Marcia Williams [Docket No. 790];

H. Motion to Strike Plaintiff's Reply [Docket No. 792];

I. Motion to Strike Expert Report of Dr. Lowenbach [Docket No. 793];

J. Motion to Exclude the Testimony of Joseph Egan (filed by the Trust) [Docket No. 803];

K. Motion to Exclude Certain Testimony of Joseph Egan (filed by the PRP Group) [Docket No 805];

L. Motion to Exclude Testimony of Steven Peters [Docket No. 807];

M. Motion to Exclude Testimony of Wiley Wright [Docket No. 809];

N. Motion to Exclude Testimony of Mark Ewen [Docket No. 812];

O. Motion to Exclude Testimony of A.J. Gravel [Docket No. 813];

P. Motion to Exclude Testimony of Richard White [Docket No. 817]; and

Q. Motion to Exclude Testimony of Marcia Williams [Docket No. 818].

IT IS SO ORDERED.

Date: 09/20/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Scott R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
salexander@taftlaw.com

John P. Arranz
SWANSON MARTIN & BELL
jarranz@smbtrials.com

Jennifer C. Baker
HUNSUCKER GOODSTEIN & NELSON
jbaker@hgnlaw.com

Brian C. Bosma
KROGER GARDIS & REGAS, LLP
bcb@kgrlaw.com

Sean P. Burke
BARNES & THORNBURG LLP
sean.burke@btlaw.com

Jayna Morse Cacioppo
TAFT STETTINIUS & HOLLISTER LLP
jcacioppo@taftlaw.com

Gregory P. Cafouros
KROGER GARDIS & REGAS, LLP
gpc@kgrlaw.com

Michael D. Chambers
TAFT STETTINIUS & HOLLISTER LLP
mchambers@taftlaw.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com

Travis A. Crump
STOLL KEENON OGDEN PLLC
Travis.Crump@skofirm.com

Michael E. DiRienzo
KAHN DEES DONOVAN & KAHN
mdirienzo@kddk.com

Hallie Miller Fahey
Troutman Sanders LLP
hallie.fahey@troutmansanders.com

Andrew Rudolph Falk
KROGER GARDIS & REGAS LLP
arf@kgrlaw.com

Maria V. Gillen
TENNESSEE VALLEY AUTHORITY
mvgillen@tva.gov

Adam T. Goebel
STOLL KEENON OGDEN PLLC
adam.goebel@skofirm.com

Michael D. Goodstein
HUNSUCKER GOODSTEIN & NELSON PC
mgoodstein@hgnlaw.com

Edward S. Griggs
BARNES & THORNBURG LLP
sean.griggs@btlaw.com

Timothy A. Haley
BARNES & THORNBURG LLP
thaley@btlaw.com

Elizabeth Schroer Harvey
SWANSON MARTIN & BELL LLP
eharvey@smbtrials.com

Samuel D. Hinkle IV
Stoll Keenon Ogden PLLC
sam.hinkle@skofirm.com

Kenneth Hayes Inskeep
BARNES & THORNBURG LLP
ken.inskeep@btlaw.com

David L. Jones
JONES WALLACE, LLC
djones@joneswallace.com

Jody E. Kahn
SWANSON MARTIN & BELL LLP
jkahn@smbtrials.com

G. Daniel Kelley Jr.
ICE MILLER LLP
daniel.kelley@icemiller.com

Matthew Theron Kinst
SWANSON MARTIN & BELL LLP
mkinst@smbtrials.com

John Milton Kyle III
BARNES & THORNBURG LLP
john.kyle@btlaw.com

Douglas W. Langdon
FROST BROWN & TODD, LLC
dlangdon@fbtlaw.com

Kyle Andrew Lansberry
LEWIS & WAGNER
klansberry@lewiswagner.com

Richard J. Lewandowski
Whyte Hirschboeck Dudek S.C.
rlewandowski@whdlaw.com

Anne E. Lynch
HUNSUCKER GOODSTEIN & NELSON PC
alynch@hgnlaw.com

Michael John Maher
SWANSON MARTIN & BELL
mmaher@smbtrials.com

Stacey H. Myers
HUNSUCKER GOODSTEIN & NELSON PC
smyers@hgnlaw.com

Michael Orville Nelson
HUNSUCKER, GOODSTEIN & NELSON
mnelson@hgnlaw.com

Reed W Neuman
NOSSAMAN, LLP/ O'CONNOR & HANNAN
rneuman@nossaman.com

Anthony W. Overholt
FROST BROWN TODD LLC
aoverholt@fbtlaw.com

Tina Marie Richards
BAKER & DANIELS - Indianapolis
tina.richards@bakerd.com

Robert W. Rock
JONES WALLACE LLC
rrock@joneswallace.com

Keith E. Rounder
TERRELL BAUGH SALMON & BORN
krounder@tbsblaw.com

Ross E. Rudolph
RUDOLPH FINE PORTER & JOHNSON
rer@rfpj.com

James P. Ryan
NOSSAMAN, LLP/O'CONNOR & HANNAN
jryan@nossaman.com

Douglas B. Sanders
BAKER & McKENZIE LLP
douglas.b.sanders@bakernet.com

G. Michael Schopmeyer
KAHN DEES DONOVAN & KAHN
mschopmeyer@kddk.com

John A. Sheehan
HUNTON & WILLIAMS LLP
JSheehan@hunton.com

Katherine L. Shelby
BINGHAM MCHALE LLP
kshelby@binghammchale.com

Leah B. Silverthorn
HUNSUCKER GOODSTEIN & NELSON
lsilverthorn@hgnlaw.com

Freedom S. N. Smith
ICE MILLER LLP
freedom.smith@icemiller.com

Donald M. Snemis
ICE MILLER LLP
donald.snemis@icemiller.com

William T. Terrell
TENNESSEE VALLEY AUTHORITY
wtterrell@tva.gov

Kevin Morris Toner
BAKER & DANIELS - Indianapolis
kevin.toner@bakerd.com

John William Watson III
BAKER & McKENZIE LLP
john.w.watson@bakernet.com

Thomas E. Wheeler II
FROST BROWN TODD LLC
twheeler@fbtlaw.com

Kenneth Thomas Williams II
STOLL KEENON & OGDEN PLLC
kt.williams@skofirm.com

David E. Wright
KROGER GARDIS & REGAS LLP
dew@kgrlaw.com